UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLARENCE T. MILLER, JR** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-805** |
| **AMERICAN SECURITY INSURANCE COMPANY** | **SECTION: "G"(2)** |

### ORDER AND REASONS

Before the Court is Defendant American Security Insurance Company's ("Defendant") Motion for Summary Judgment.[1] In this litigation, Plaintiff Clarence T. Miller, Jr ("Plaintiff") brings breach of insurance contract and bad faith claims against Defendant.[2] In the motion, Defendant argues Plaintiff lacks standing to bring claims against Defendant and that Plaintiff's action is time barred.[3] Plaintiff argues he has an economic interest in the property, and therefore can sue to enforce the insurance policy (the "Policy"), additionally arguing the suit was timely filed.[4] Considering the motion, the memoranda in opposition and support, the record, and the applicable law, this Court grants Defendant's Motion for Summary Judgment.

### I. Background

Plaintiff filed a Petition against Defendant in the Twenty-Ninth Judicial District Court for the Parish of St. Charles, State of Louisiana.[5] On March 29, 2024, Defendant removed the case to

---

[1] Rec. Doc. 9

[2] Rec. Doc. 1-1.

[3] *Id*.

[4] Rec. Doc. 13.

[5] Rec. Doc. 1-1.

1

this Court.[6] According to the Petition, Defendant issued the Policy covering Plaintiff's property at 608 Turtle Creek Lane, St. Rose, Louisiana 70087 (the "Property").[7] According to the notice from Plaintiff's mortgage lender included in the Policy, Wells Fargo Bank, N.A. #936 ("Wells Fargo") informed Plaintiff it had purchased the Policy on Plaintiff's behalf because it did not receive acceptable proof of insurance.[8] Thus, the Policy at issue is a "force-placed" (or "lender-placed") policy, which insures the lender's collateral when the borrower fails to maintain the required type of insurance.[9] Plaintiff alleges that Hurricane Ida directly and/or indirectly damaged the Property on or about August 29, 2021.[10] Plaintiff purportedly notified Defendant of the loss and delivered to Defendant a full and particular account of Plaintiff's expenses and losses as a result of the loss.[11] Plaintiff avers Defendant has failed to fulfill its obligations pursuant to the Policy.[12] Plaintiff brings a breach of insurance contract claim and a bad faith claim in violation of Louisiana Revised Statutes §§ 22:1892 and 22:1973 against Defendant as a result of Defendant's alleged failure to timely pay insurance proceeds due under the Policy.[13]

On October 25, 2024, Defendant filed the instant motion for summary judgment, asserting that Plaintiff has no cognizable claims to enforce the policy.[14] Defendant argues Plaintiff lacks

---

[6] Rec. Doc. 1.

[7] Rec Doc. 1-1 at 4.

[8] Rec. Doc. 1-2 at 2.

[9] *Williams v. Certain Underwriters at Lloyd's of London*, 398 F. App'x 44, 45 (5th Cir. 2010).

[10] Rec Doc. 1-1 at 5.

[11] *Id*.

[12] *Id*.

[13] *Id*. at 6.

[14] Rec. Doc. 9 at 1–2.

standing to assert a bad faith claim under Louisiana law and Plaintiff's action is time-barred because Plaintiff failed to bring this suit within two years of the date of loss.[15] On November 25, 2025, Plaintiff filed an opposition, asserting that the insurance contract remains enforceable for Plaintiff's benefit, that Plaintiff is a third-party beneficiary, and that his claim is timely.[16] Defendant filed a reply in further support of the motion on the same day.[17]

## II. Parties' Arguments

### A. *Defendant's Arguments in Support of the Motion for Summary Judgment*

Defendant makes three arguments in support of its motion for summary judgment.[18] First, Defendant argues Plaintiff lacks standing to enforce the Policy.[19] Defendant contends, under Louisiana law, only a named insured, additional insured, or a third-party beneficiary to a policy has standing to sue its issuer for breach of an insurance contract.[20] Defendant asserts Plaintiff is not an insured or an additional insured.[21] Defendant points out that Plaintiff is listed on the Policy's declaration page as a "Borrower," but not as the insured party or an additional insured party.[22] Defendant avers the Policy does not identify any insureds other than Plaintiff's mortgage lender, Wells Fargo.[23]

---

[15] *Id*.

[16] Rec. Doc. 13 at 2, 4.

[17] Rec. Doc. 12.

[18] Rec. Doc. 9 at 1–2.

[19] Rec. Doc. 9-1 at 5–6.

[20] *Id*.

[21] *Id*. at 5.

[22] *Id*. at 2, 7.

[23] *Id*. at 3.

Defendant argues, because Plaintiff is not a named insured or additional insured, Plaintiff can only achieve the standing necessary to sue Defendant by being a third-party beneficiary to the Policy. Defendant points to three factors used in the Fifth Circuit to determine whether a contract provides a benefit to a third-party.[24] These factors include: (1) the contract must manifest a clear intention to benefit the third-party; (2) there must be certainty as to the benefit provided to the third-party; and (3) the benefit must not be merely an incident of the contract between the parties.[25] Defendant argues Plaintiff does not meet these factors because "the Policy 'Loss Payment' clause expressly states . . . that all policy benefits are payable to plaintiff's lender."[26] Accordingly, Defendant argues that summary judgment is proper because "[P]laintiff has no contractual standing to sue to enforce the [Policy]."[27]

Second, Defendant maintains Plaintiff cannot assert a bad faith claim under Louisiana law because he "does not have a cognizable claim for insurance coverage."[28] Defendant avers "a plaintiff must have a valid underlying claim upon which insurance coverage is based" to bring a bad faith claim under either Louisiana Revised Statutes §§ 22:1892 or 22:1973.[29] According to Defendant, because Plaintiff's breach of contract claim against Defendant fails due to a lack of standing, Plaintiff's bad faith claim should also fail.[30]

---

[24] *Id*. at 5–6 (citations omitted).

[25] *Williams*, 398 F. App'x at 47; *Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 290 (5th Cir. 2023).

[26] Rec. Doc. 9-1 at 6.

[27] *Id*.

[28] *Id*.

[29] *Id*.

[30] *Id*. at 7.

4

Finally, Defendant argues that Plaintiff's action is time-barred under the "Action Against Us" clause in the Policy.[31] Defendant points to the language of the Policy, which requires that "all action must be brought within two years of the date of loss."[32] Because Plaintiff brought this action on March 11, 2024, more than two years after the date of loss, Defendant asserts that Plaintiff's claim is untimely.[33]

### B. *Plaintiff's Arguments in Opposition to Motion for Summary Judgment*

In opposition, Plaintiff first argues that a Louisiana insurance contract can be enforced for the benefit of the Plaintiff, because he has an insurable interest in the Property.[34] Plaintiff cites Louisiana Revised Statute § 22:853 to argue that "[n]o contract of Insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of person having an insurable interest in the things insured."[35] Plaintiff avers that, as the owner of the Property, he has an economic interest in its preservation.[36] Although Wells Fargo is the named insured in the Policy, Plaintiff contends the Policy can be enforced for his benefit. Accordingly, Plaintiff argues he has standing to enforce the Policy on these grounds.[37]

Second, Plaintiff argues he has standing to sue as a third-party beneficiary of the Policy.[38] Plaintiff asserts "the Policy remains ambiguous and leaves open the possibility of assignment and

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] Rec. Doc. 13 at 2.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 3.

[38] *Id.*

direction of benefits to the Plaintiff."[39] Specifically, Plaintiff argues, because the Policy does not prohibit assigning or granting coverage benefits to another, except for a bailee,[40] coverage can be directed to individuals with an insurable interest.[41] Accordingly, Plaintiff asserts a trier of fact would determine Plaintiff/Borrower is a third-party beneficiary.[42]

Finally, Plaintiff argues his claim is not untimely because he filed the suit on August 29, 2023, within the two-year proscriptive period.[43] Plaintiff avers that "[a]ccording to the Clerk of Court for the 29th J.D.C. this case has existed and has remained an open proceeding since August 29, 2023."[44]

### C. *Defendant's Reply in Further Support of Motion for Summary Judgment*

In reply, Defendant first asserts, even assuming Plaintiff had contractual standing to enforce the Policy, Plaintiff's action is time barred.[45] Defendant points out that "[t]he process as served on [Defendant], attached to the Notice of Removal as [Rec. Doc. 1-1], includes a certified copy of the Petition for Damages that the clerk of court date stamped March 11, 2024."[46] Defendant avers that Plaintiff filed Rec. Doc. 11-1 to claim that the suit was filed on August 29, 2023.[47] However, Defendant notes that "[Rec. Doc. 11-1] is stamped 'FAX MEMO' and bears other markings to

---

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *See id.* at 4.

[44] *Id.*

[45] Rec. Doc. 12 at. 1.

[46] *Id.*

[47] *Id.*

show it is a fax filed version of plaintiff's Petition."[48] Defendant contends the burden is on Plaintiff to demonstrate compliance with all elements of Louisiana Revised Statute § 13:850 in order to establish Plaintiff's actual filing date as August 29, 2023.[49] Because Plaintiff has not attempted to make this showing and is unlikely to cure the defect, Defendant argues Plaintiff's action is time barred.[50]

Second, Defendant counters that Louisiana law granting an "insurable interest" to Plaintiff just means he qualified to purchase insurance had he chosen to do so.[51] Defendant argues Wells Fargo also had an insurable interest, and it "purchased the policy for itself."[52] Defendant asserts that Plaintiff has failed to show simply having an insurable interest on a property confers any rights on him under the Policy.[53] Finally, Defendant asserts that Plaintiff is only hypothetically an assignee of Wells Fargo's rights, but has not shown that this assignment exists.[54]

### III. Legal Standard

#### A.    *Legal Standard for Summary Judgment*

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[55] To decide whether a genuine dispute as to any material fact exists, the court

---

[48] *Id*.

[49] *Id*. at 2.

[50] *Id*. at 3.

[51] *Id*. at 3–4. Defendant cited *Miller v. Hartford Fire Ins. Co.* to assert that a mortgagee has a separate insurable interest. 412 So.2d 662, 666 (La. Ct. App. 2d Cir. 1982).

[52] Rec. Doc. 12 at 3.

[53] *Id.* at 4.

[54] *Id*. at 4.

[55] FED. R. CIV. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[56] All reasonable inferences are drawn in favor of the nonmoving party. Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[57] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[58] The nonmoving party may not rest upon the pleadings.[59] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[60]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[61] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[62] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how

---

[56] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[57] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[58] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[59] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[60] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[61] *Celotex*, 477 U.S. at 323.

[62] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

8

that evidence supports the nonmoving party's claims.⁶³ The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."⁶⁴

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."⁶⁵ Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.⁶⁶ Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.

### B.    *Interpreting Insurance Contracts under Louisiana Law*

Under Louisiana law, "an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."⁶⁷ "The Louisiana Civil Code provides that '[t]he judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract' by construing words and

---

⁶³ *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

⁶⁴ *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

⁶⁵ *Little*, 37 F.3d at 1075 (internal citations omitted).

⁶⁶ *Morris*, 144 F.3d at 380.

⁶⁷ *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)); *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014) (quoting *Mayo v. State Farm Mut. Auto. Ins. Co.*, 869 So.2d 96, 99 (La. 2004) (quotation marks omitted)).

phrases 'using their plain, ordinary and generally prevailing meaning.'"[68] "Interpretation of an insurance contract generally involves a question of law."[69]

If the contract is clear and unambiguous and does not have absurd consequences, the court applies the ordinary meaning of the contractual language.[70] If the insurance policy contains ambiguous provisions, the ambiguity "must be resolved by construing the policy as a whole."[71] Yet an insurance contract "should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion."[72] "Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms."[73]

## IV. Analysis

### A.   *Whether Plaintiff Is a Third-Party Beneficiary Under the Policy*

The Fifth Circuit has laid out three categories of parties possessing standing to enforce a Policy due to their interest in proceeds paid out under a policy: named insureds, additional named insureds, or an intended third-party beneficiary of a policy.[74] Defendant asserts Plaintiff lacks

---

[68] *Wisznia Co.*, 759 F.3d at 448–49 (quoting *Mayo*, 869 So.2d at 99).

[69] *In re Katrina Canal Breaches*, 495 F.3d at 206 (citing *Bonin v. Westport Ins. Corp.*, 930 So. 2d 906, 910 (La. 2006)).

[70] *Prejean v. Guillory*, 38 So.3d 274, 279 (La. 2010); *see also Sapp v. Wood Grp. PSN, Inc.*, 2016 WL 6995897, at *4 (E.D. La. Nov. 30, 2016) (Brown, C.J.).

[71] *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994) (citing LA. CIV. CODE art. 2050).

[72] *Cadwallader*, 848 So.2d at 580.

[73] *Id.*

[74] *See Williams*, 398 F. App'x at 47 (citing *Joseph v. Hospital Service District No. 2 of the Parish of St. Mary*, 939 So.2d 1206, 1211 (La. 2006)). Plaintiff claims, because he has an "insurable interest" in the property through ownership as recognized under LA R.S. 22:853, he possesses standing to sue under the Policy. But simply having an insurable interest in a property does not place Plaintiff in one of the three categories necessary to have standing to sue

10

standing to sue for breach of insurance contract because Plaintiff is not a named insured, an additional named insured, or a third-party beneficiary under the Policy.[75] Here, Plaintiff is not a named insured or an additional insured under the Policy.[76] The Policy does not designate Plaintiff as either,[77] and Plaintiff does not dispute Defendant's assertion he is not a named insured or an additional named insured. At issue is whether Plaintiff is a third-party beneficiary of the Policy, giving him standing to sue.

Under Louisiana law, a contracting party may stipulate a benefit for a third-party beneficiary.[78] Louisiana courts have termed this a "*stipulation pour autrui*."[79] A *stipulation pour autrui* is never presumed and the burden of proof is on the party claiming the benefit.[80] The Louisiana Supreme Court has articulated the contract must "manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third-party beneficiary cannot meet his burden of proof."[81] The Louisiana Supreme Court set forth a three-part test to determine whether a *stipulation pour autrui* exists in a contract: (1) the contract must manifest a clear intention to benefit the third-party; (2) there must be certainty as to the benefit provided to

---

pursuant to the Policy. Having an insurable interest simply means Plaintiff could have insured the property if he wanted to, not that he is involved in the Policy before the Court in a necessary way to sue to enforce it.

[75] *See* Rec. Doc. 9-1 at 5-6.

[76] Rec. Doc. 1-2 at 2. Specifically, Wells Fargo sent Plaintiff a notice "Action required – hazard insurance renewal policy/certificate enclosed" on March 10, 2021 stating that "[e]nclosed is a hazard insurance renewal policy/certificate *we have obtained* in accordance with the terms of the account documents you signed." *Id*. (emphasis added). The Declarations page provides that Wells Fargo is the only named insured and Plaintiff is listed as Borrower. *Id*. at 5.

[77] *See id*. at 2.

[78] La. Civ. Code. art. 1978.

[79] *Joseph*, 939 So.2d at 1211.

[80] *Id*. at 1212.

[81] *Id*.

11

the third-party; and (3) the benefit must not be merely an incident of the contract between the parties.[82]

In *Williams v. Certain Underwriters at Lloyd's London*, the Fifth Circuit considered whether the terms of a force-placed flood insurance policy created a *stipulation pour autrui* in favor of the plaintiff.[83] The policy listed the mortgagee as the sole insured and provided coverage up to $169,000.[84] The Fifth Circuit, applying Louisiana law, held the plaintiffs did not satisfy their burden of showing the policy manifested a clear intent to benefit them.[85] The Court concluded the policy was intended to only benefit the mortgagee because the policy clearly and unambiguously stated, "[r]egardless of the insurable interests of [the plaintiffs] . . . in the insured property, [the mortgagee is] our sole insured under this policy." The Court further pointed out, "to obviate any possible ambiguity, the Policy specifies that [the mortgagee] is [the insurer's] sole insured under this policy and that benefits paid will be made directly to [the mortgagee]."[86] The Fifth Circuit observed, although certain language in the policy when viewed in isolation might suggest a stipulation or benefit for the plaintiffs,[87] the policy did not contain any provision specifying any benefit in any situation would go to the plaintiffs rather than the mortgagee.[88] Accordingly, the

---

[82] *Williams*, 398 F. App'x at 47; *Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 290 (5th Cir. 2023).

[83] *Williams*, 398 F. App'x at 45.

[84] *Id*.

[85] *Id*.

[86] *Id*. at 48 (internal quotations omitted).

[87] *Id*. at 48.

[88] *Id*. at 49. The Fifth Circuit distinguished *Williams* from *Lee v. Safeco Insurance Company of America*, where the insurance policy stated that "[a]mounts payable in excess of your [AMC's] interest will be paid to the borrower unless some other person is named by the borrower to receive payment." *Williams*, 398 F. App'x at 49 (citing *Lee. v. Safeco Ins. Co. of Am.*, No. 08-1100, 2008 WL 2622997, *4 (E.D. La. July 2, 2008) (internal quotation marks omitted)). In *Lee*, as evidenced by the policy's language, the policy contemplated a specific situation in which the

12

Fifth Circuit held that "[e]ven assuming that any potential additional benefit might go to the [plaintiffs], the language in the Policy falls well below the requisite finding of a 'manifestly clear stipulation' to create a *stipulation pour autrui*."[89]

Other sections of this Court have considered whether a "borrower" in a policy could prove a *stipulation pour autrui* exists in force-placed insurance contracts. In *James v. American Security Insurance Co.*, another Section of this Court held that the insurance policy did not manifest a clear intention to benefit a third party, and thus, the borrower could not prove a *stipulation pour autrui*.[90] The borrower in that case, like in this one, brought breach of contract and bad faith claims against the insurance company.[91] In holding that a *stipulation pour autrui* did not exist in the contract, the *James* Court reasoned that the contract only stated that any loss payment issued would be to the named insured (the mortgagee), and there existed no clear and direct language in the policy making it "manifestly clear" that any other party would be paid benefits.[92] Due to the lack of clear language providing for the borrower to be paid in an event triggering the policy, the stipulation was neither clear nor certain, and the plaintiff did not have contractual standing to sue for breach of contract because a *stipulation pour autrui* did not exist.[93]

Here, the "Loss Payment" provision of the Policy, found at paragraph 12(c) of the Policy's "Conditions" section (the "Loss Payment Provision"), states:

---

borrower would receive a benefit pursuant to the policy, thus reflecting a *stipulation pour autrui*. *Lee*, 2008 WL 2622997 at *4. No such provision exists in the Policy before the Court in this case.

[89] *Id.*

[90] *James v. Am. Sec. Ins. Co.*, No. CV 21-1861, 2021 WL 5795292, at *2 (E.D. La. Dec. 7, 2021).

[91] *Id.* at *1.

[92] *Id.* at *2.

[93] *Id.*

13

>Loss will be made payable to the named insured. No coverage will be available to any mortgagee other than that shown as the named insured on the Declarations. The undisputed portion of the loss will be payable within 30 days after we receive your proof of loss.[94]

As stated, Plaintiff is listed on the Policy merely as the "borrower," not as the insured. The plain and clear language of the Policy only provides that benefits will be paid to the "named insured," which in this case is Wells Fargo.[95] Other courts interpreting the same Loss Payment Provision included in Defendant's policies have reached the same conclusion.[96] At no point in the Loss Payment Provision, or outside of it, does the Policy mention a situation in which proceeds can be payable to the borrower.[97] Without reference to a clear situation in which the borrower could recover a benefit from the Policy, the Policy does not manifest a clear intention to benefit the borrower similar to the policies in *Williams* and *James*, a necessary showing for a finding of a *stipulation pour autrui*.[98]

To attempt to demonstrate a manifest and clear intention to benefit Plaintiff, he points to a particular portion of the policy where it states the insurer will not recognize any assignment of

---

[94] Rec. Doc 1-2 at 20. The cited section is found in the Louisiana Replacement Cost Endorsement 1, which appears to be an amendment to the original Policy, although the parties do not address this. *Id.* The original language in the Loss Payment provision of the Policy similarly provides that "We will adjust all losses with the named insured. Loss will be made payable to the named insured. No coverage will be available to any mortgagee other than that shown as the named insured on the Declarations." Rec. Doc. 1-2 at 13.

[95] *Id.*

[96] *See, e.g.*, *McNamara v. Am. Sec. Ins. Co.*, No. CV 24-607, 2025 WL 105303, at *3 (E.D. La. Jan. 15, 2025) (holding that "the Loss Payment Provision clearly manifests an intent that Policy benefits be paid to Specialized Loan Servicing as the 'named insured,' not [the plaintiff]."); *Brown v. Am. Mod. Home Ins. Co.*, 2017 WL 2290268, at *6 (E.D. La. May 25, 2017) (holding "[t]here is no manifestly clear intention for the American Security policy to provide a benefit to plaintiffs that would be sufficient to create a *stipulation pour autrui*, and plaintiffs cannot sue American Security for breaching the insurance contract.").

[97] Rec. Doc. 1-2 at 7.

[98] *See Williams*, 398 F. App'x at 47; *Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 290 (5th Cir. 2023).

14

coverage to bailees, those who hold, store, or move the property.[99] Plaintiff argues this makes him a third-party beneficiary of the Policy because the Policy expressly states bailees are excluded from being assigned coverage benefits, but parties with insurable interests are not specifically excluded, alluding to the ability "to direct coverage to individuals with an insurable interest."[100] But, as discussed, part of the standard for a finding of a *stipulation pour autrui* is that any such stipulation must manifest clear and certain intention to benefit the third-party and the benefit itself must be certain.[101] Attempting to conclude assignment can occur for those with insurable interests through a negative inference fails to manifest clear and certain intention to benefit those with an insurable interest. Even if this negative inference were held to reflect a clear and certain intention, there exists no certainty as to what coverage benefits may be assigned to those with an insurable interest, leaving the benefit uncertain. Thus, the Policy failing to prohibit assignment to parties with insurable interests does not reflect evidence of a *stipulation pour autrui*.

### B.    *Whether Plaintiff Can Bring Bad Faith Statutory Claim and Timeliness*

Because Plaintiff does not have standing to sue pursuant to the Policy, Plaintiff cannot bring a bad faith claim against the insurers.[102] Additionally, this Court need not reach the question of the suit's timeliness considering Plaintiff did not have standing to sue in the first place.

### V. Conclusion

For the reasons discussed above, Plaintiff does not have standing to sue under the Policy. Plaintiff is neither a named insured, an additional insured, and there exists no portion of the Policy

---

[99] *Id.*

[100] *Id.*

[101] *Williams*, 398 F. App'x at 47.

[102] *See, e.g., GeoVera Specialty Ins. Co. v. Joachin*, 2019 WL 8273471, at *9 (ED. La. June 28, 2019) (explaining, because the plaintiffs did not have a cognizable claim for coverage against the defendants, Plaintiffs bad faith claims could not be asserted).

that manifests a certain intent on granting Plaintiff pay out in any situation, meaning Plaintiff is not a third-party beneficiary of the Policy. Because Plaintiff does not have standing to sue under the Policy, Plaintiff cannot bring a bad faith claim against Defendant.

Accordingly,

**IT IS HEREBY ORDERED** that American Security Insurance Company's Motion for Summary Judgment[103] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Clarence T. Miller, Jr.'s claims against American Security Insurance Company are **DISMISSED WITHOUT PREJUDICE** for lack of standing.

**NEW ORLEANS, LOUISIANA**, this 15th day of April, 2025.

**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[103] Rec. Doc. 9.